UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER EDWARDS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>S. MORA, et al.,<br><br>　　　　Defendants. | Case No. 20-cv-05138-EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO COMPEL, AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT**<br><br>Docket Nos. 29, 33 |

## I.　INTRODUCTION

In this *pro se* prisoner's civil rights action, Walter Edwards complains of actions taken by correctional officers at the Correctional Training Facility ("CTF") in Soledad, California.

Before the Court is Mr. Edwards's motion to compel the production of a deposition transcript. *See* Docket No. 33. For the reasons discussed below, the motion to compel will be denied.

Also before the Court is Defendants' partial motion for summary judgment. Docket No. 29 ("MSJ" or "partial summary judgment motion"). For the reasons discussed below, the partial summary judgment motion will be granted.

## II.　BACKGROUND

The following facts are undisputed unless otherwise noted.

A.　<u>The Parties</u>

The relevant events happened in November 2019. At the relevant time, Mr. Edwards was a prisoner housed at CTF. *See* Docket No. 1 ("Complaint").

The Defendants are Correctional Officers Stephens, Madsen, Daguio, Mora, and Bramers. *See id*. During the relevant events, all five Defendants worked at CTF. *See id*.

B.    November 6, 2019 Patdown Search

On November 6, 2019, when Mr. Edwards was going from his cell to the dining hall for breakfast, he was approached by Defendants Stephens and Madsen. Compl. at 8. They told him to put his hands on the wall so they could conduct a patdown body search. *See id*. Mr. Edwards contends that he complied with the patdown body search, *see id*., but Defendants represent that he was confrontational and appeared agitated, *see* Docket No. 29-5 ("Madsen Declaration") ¶¶ 8, 12.

Mr. Edwards contends that, as Defendant Stephens searched him, she placed her hand between his legs and deliberately grabbed his genitalia very aggressively, causing him to experience a sharp pain. Compl. at 8. Mr. Edwards objected to the manner in which Defendant Stephens conducted the search. *See id*. Defendant Stephens responded by saying, "'Keep your hands on the fucking wall!'" *Id*. Defendant Stephens then grabbed the waistband of Mr. Edwards' underwear and pulled it away from his body, exposing his buttocks. *See id*. Defendant Madsen watched and laughed. *See id*. Defendants dispute whether this interaction occurred, and Defendant Madsen represents that she saw and heard nothing to indicate Defendant Stephens searched Mr. Edwards in this way. *See* Madsen Decl. ¶¶ 8-12.

Mr. Edwards represents that he threatened to file a grievance against Defendant Stephens regarding the inappropriate search. *See id*. Mr. Edwards represents that Defendant Stephens replied, "'I search you how I want to, you're going to 602 me, I'm going to have your Housing Unit officers trash your cell right now, and I'm going to strip search you!'" *Id.* at 8-9. Defendant Madsen represents that this exchange did not occur. *See* Madsen Decl. ¶ 11.

C.    November 6, 2019 Unclothed Search

Mr. Edwards represents that Defendant Stephens told Defendants Madsen and Daguio to conduct an unclothed body search of Mr. Edwards. *See id*. at 9. Defendant Madsen represents that, based on his confrontational and agitated behavior, she suspected Mr. Edwards possessed contraband. *See* Madsen Decl. ¶ 13.

Defendants Madsen and Daguio led Mr. Edwards to a shower area in a private bathroom.

2

*See* Compl. at 9, Madsen Decl. ¶ 14. "The private bathrooms have only one entrance. They are windowless, larger than typical cells, and other inmates are unable to see inside from their cells." Madsen Decl. ¶ 14.

Defendant Daguio instructed Mr. Edwards to disrobe and to hand Defendant Daguio his clothes. *See* Compl. at 9. Mr. Edwards contends that Defendant Madsen observed this process with a smirk. *See id*. Defendant Madsen represents that she "stood outside the private bathroom with [her] back to the door," that Defendant Daguio passed her the articles of Mr. Edwards's clothing as they were removed, and that she "searched each article of clothing." Madsen Decl. ¶¶ 14, 16.

After Defendant Madsen had searched each article of Mr. Edwards's clothing, all clothing was returned to him, and the search concluded. *Id*. ¶ 17.

D.   Cell Search

Mr. Edwards contends that Defendant Stephens told Defendants Mora and Bramers to "trash his cell" because Mr. Edwards had threatened to file a grievance against Defendant Stephens. Compl. at 9. Defendant Mora represents that he randomly searched Mr. Edwards's cell in the course of his regular duties, that Defendant Stephens did not tell him to trash Mr. Edwards's cell, and that he was unaware that Mr. Edwards had threatened to file a grievance against Defendant Stephens. *See* Docket No. 29-6 ("Mora Declaration") ¶¶ 2-3, 5.

Mr. Edwards contends that Defendants Mora and Bramers left Mr. Edwards's cell in disarray, and confiscated his tablet and earbuds. *See* Compl. at 9. Defendant Mora states that he confiscated Mr. Edwards's tablet and earbuds during the cell search because he believed them to be contraband used for illegal communications. *See* Mora Decl. ¶ 6. However, after Defendant Mora checked property records and "determined the tablet and headphones were properly issued," he returned the tablet. *Id*. He unfortunately lost Mr. Edwards's headphones, but "subsequently issued a replacement pair of brand new headphones" to Mr. Edwards. *Id*. ¶ 7.

Mr. Edwards contends that his earbuds were not returned due to Defendants' desire to teach him a lesson. *See* Compl. at 9. Although Mr. Edwards failed to mention in his July 9, 2020 Complaint that he was issued new headphones as a replacement, *see id*., on December 31, 2019,

3

1  Mr. Edwards acknowledged receipt of replacement headphones, *see* Docket No. 29-4 ("Galvan
2  Declaration, Exhibit A") at 2.

3  E.     Procedural History

4  This case originally was assigned to Magistrate Judge Kandis Westmore, who reviewed the
5  Complaint under 28 U.S.C. § 1915A, which requires the district court to identify any cognizable
6  claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which
7  relief may be granted, or seek monetary relief from a defendant who is immune from such relief.
8  Magistrate Judge Westmore issued an order of service in which she found that the Complaint
9  stated several cognizable claims for relief:

> Liberally construed, these allegations appear to give rise to the following cognizable claims: (1) cruel and unusual punishment in violation of the Eighth Amendment against Stephens and Madsen based Stephens' squeezing Plaintiff's genitalia with Madsen standing by, watching, laughing and failing to stop Stephens' conduct: (2) excessive force in violation of the Eighth Amendment against Stephens and Madsen for the same conduct; (3) a retaliation claim against all Defendants for engaging in adverse conduct intending to keep Plaintiff from exercising his right to file grievances; (4) a Fourth Amendment claim against Daguio and Madsen for conducting an intrusive, demeaning and humiliating unclothed body search of Plaintiff; and (5) a claim against Mora and Bramers for appropriating Plaintiff's property without due process and in retaliation for saying he would file a grievance against Stephens.

Docket No. 5 at 3.

The case was later reassigned to the undersigned when one or more parties declined to consent to a magistrate judge presiding over the case. Docket Nos. 19, 20.

Defendants moved to dismiss some of Mr. Edwards's allegations, Docket No. 17, and their motion was granted in part, Docket No. 23. Following Defendants' partial motion to dismiss, the claims still present in this action are:

- Eighth Amendment claims against Defendants Stephens and Madsen for infliction of cruel and unusual punishment and use of excessive force during the patdown search;

- First Amendment claims against Defendant Stephens for ordering other officers to retaliate against Mr. Edwards; against Defendant Madsen for participating in a

4

retaliatory unclothed search; and against Defendants Mora and Bramers for a retaliatory cell search and property confiscation; and

- Fourth Amendment claims against Defendants Daguio and Madsen for conducting an unclothed search in a humiliating fashion.

Defendants now move for partial summary judgment as to:

- The Eighth Amendment claims against Defendant Madsen;
- The Fourth Amendment claims against Defendants Madsen and Daguio; and
- The First Amendment claims against Defendants Mora and Bramers.

Defendants' partial summary judgment motion does not discuss the claims against Defendant Stephens, or the retaliation claim against Defendant Madsen. *See generally*, MSJ.

After Defendants filed their partial summary judgment motion, Mr. Edwards moved to compel production of the transcript of his entire deposition. Docket No. 33.

### III.  VENUE AND JURISDICTION

Venue is proper in the Northern District of California because the events or omissions giving rise to the Complaint occurred at a prison in Monterey County, which is located within the Northern District. *See* 28 U.S.C. §§ 84, 1391(b). The Court has federal question jurisdiction over this action brought under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1331.

### IV.  MOTION TO COMPEL

Mr. Edwards moves to compel production of the entirety of his deposition transcript, *see* Docket No. 33, as opposed to the portions relied upon by Defendants in their partial summary judgment motion, *see* Docket No. 29-2 (attaching ten pages of the deposition transcript). Defendants oppose, noting that it is the officer who recorded the deposition who is responsible for retaining the deposition record, and who "must furnish a copy of the transcript or recording to any party or the deponent" "[w]hen paid reasonable charges." Fed. R. Civ. P. 30(f)(3). Defendants explain that they "cannot provide the deposition transcript to Edwards without vitiating the Court Reporter's rights to control, own, and receive a reasonable fee for production of the deposition transcript." Docket No. 35 at 5.

Defendants' point is well-taken. The Ninth Circuit has upheld a district court's decision to

deny a request for the production of a deposition transcript, reasoning that a party "must bear his own discovery costs." *Matthews v. Puckett*, 670 F. App'x 964, 965 (9th Cir. 2016) (citing Fed. R. Civ. P. 30(f)(3)). Other courts in this District have observed that there is "no authority allowing [a court] to compel defendants to" produce a deposition transcript at their expense; that "[t]he court itself cannot use public funds to provide a transcript"; and that a party must obtain a copy directly from the court reporter, for a fee. *Hutchinson v. Cal. Prison Indus. Auth.*, No. 4:13-CV-04635-CW-LB, 2015 WL 4511294, at *2 (N.D. Cal. July 23, 2015) (citing Fed. R. Civ. P. 30(f)(3) and *Tedder v. Odel,* 890 F.2d 201, 111 (9th Cir. 1989)). Courts have adhered to these principles even when the transcript request comes from a litigant who is a pro se inmate. *See id.*; *see also Panah v. Dep't of Corr. & Rehab.*, No. 14-00166 BLF (PR), 2021 WL 1313086, at *3 (N.D. Cal. Apr. 7, 2021); *Silverman v. Christian*, No. 18-01115 BLF (PR), 2019 WL 2085666, at *1 (N.D. Cal. May 10, 2019). Indeed, the Supreme Court has previously held that "the expenditure of public funds [on behalf of an indigent litigant] is proper only when authorized by Congress." *United States v. MacCollom,* 426 U.S. 317, 321 (1976). *See also Tedder v. Odel*, 890 F.2d 210, 211–12 (9th Cir. 1989) (finding that a litigant proceeding *in forma pauperis* was not entitled to waiver of witness fees and expenses, because there was no allowance for such a waiver in the *in forma pauperis* statute) (applying *MacCollom*, 426 U.S. at 321). Here, Congress could have provided a mechanism in the *in forma pauperis statute* for an indigent litigant to obtain deposition transcripts at his opponent's or the federal government's expense, but chose not to do so. *See generally*, 28 U.S.C. § 1915 (not providing for free deposition transcripts). *Cf. id.* at § 1915(c) (providing that in some circumstances, the court may direct the federal government to pay for a transcript of court proceedings). Because Congress chose not to authorize such an expenditure, it is not within the Court's power to provide Mr. Edwards with free discovery. *See MacCollom*, 426 U.S. at 321.

For these reasons, Mr. Edwards's motion to compel is **DENIED**. However, the Court notes that it did not find it necessary to refer to the deposition transcript while evaluating Defendants' partial summary judgment motion.

## V. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, discovery and affidavits show that there

6

1  is "no genuine dispute as to any material fact and [that] the moving party is entitled to judgment as
2  a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party
3  who fails to make a showing sufficient to establish the existence of an element essential to that
4  party's case, and on which that party will bear the burden of proof at trial . . . since a complete
5  failure of proof concerning an essential element of the nonmoving party's case necessarily renders
6  all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is
7  material if it might affect the outcome of the lawsuit under governing law, and a dispute about
8  such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict
9  for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

10  In a typical summary judgment motion, a defendant moves for judgment against a plaintiff
11  on the merits of his claim. In such a situation, the moving party bears the initial burden of
12  identifying those portions of the record which demonstrate the absence of a genuine dispute of
13  material fact. The burden then shifts to the nonmoving party , which must "go beyond the
14  pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or
15  admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"
16  *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The non-moving party "must show more
17  than the mere existence of a scintilla of evidence." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376,
18  387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252). "[T]he non-moving party must come
19  forth with evidence from which a jury could reasonably render a verdict in the non-moving party's
20  favor." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252). If the non-moving party fails to make this
21  showing, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323.

22  A court's function on a summary judgment motion is not to make credibility
23  determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W.*
24  *Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must
25  be viewed in the light most favorable to the nonmoving party, and inferences drawn from the facts
26  must be viewed in the light most favorable to the nonmoving party. *See id*. at 631.

27  However, a court's obligation to view evidence in the light most favorable to the non-
28  movant does not require it to ignore undisputed evidence produced by the movant. *See L.F. v.*

7

1   *Lake Wash. Sch. Dist.*, 947 F.3d 621, 625 (9th Cir. 2020). Even pro se litigants must identify or
2   submit some competent evidence to support a claim. *See Soto v. Sweetman*, 882 F.3d 865, 873
3   (9th Cir. 2018) (plaintiff not entitled to equitable tolling where he failed to submit any competent
4   evidence in his opposition). Nor is it the task of the district court to scour the record in search of a
5   genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The plaintiff
6   must identify with reasonable particularity the evidence that precludes summary judgment. *Id.;
7   see also Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29, 1031 (9th Cir. 2001) (even if
8   there is evidence in the court file which creates a genuine issue of material fact, a court may grant
9   summary judgment if the opposing papers do not include or conveniently refer to that evidence).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Statements of fact in Mr. Edwards's Complaint are considered as evidence in evaluating the motion for summary judgment because he verified the complaint. *See* Docket No. 1 at 17.

## VI.    DISCUSSION

The Court first will discuss Mr. Edwards's Eighth Amendment claims against Defendant Madsen; then his Fourth Amendment claims against Defendants Madsen and Daguio; and finally his First Amendment claims against Defendants Mora and Bramers.

A.  <u>Defendant Madsen is Entitled to Summary Judgment on Mr. Edwards's Eighth Amendment Claims</u>

Mr. Edwards contends that Defendant Madsen was deliberately indifferent to Defendant Stephens's infliction of cruel and unusual punishment, when Defendant Madsen failed to intervene to stop Defendant Stephens's painful grabbing of Mr. Edwards's genitalia. Mr. Edwards also contends that Defendant Madsen is liable for Defendant Stephens's use of excessive force.

1. Deliberate Indifference

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan,* 511 U.S. 825, 832 (1994). Deliberate indifference to an inmate's health or safety may violate the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, *i.e.*, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and (2) the official is, subjectively, deliberately indifferent to the substantial risk of serious harm. *See Farmer,* 511 U.S. at 834. Under the deliberate indifference standard, the prison "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Here, Defendants argue that Defendant Madsen was not aware that Defendant Stephens had inflicted pain by grabbing Mr. Edwards's genitalia, and that in any event she had no opportunity to intervene. See MSJ at 6.

Neither Mr. Edwards's Complaint nor the evidence provided in support of his Opposition contradict Defendants' assertion. Mr. Edwards does not introduce any facts to suggest that Defendant Madsen knew of Defendant Stephens's intention to search Mr. Edwards inappropriately, or even that Defendant Madsen knew of the inappropriate search in the moment that Defendant Stephens grabbed Mr. Edwards's genitalia. Rather, Mr. Edwards alleges in the affidavit filed in support of his Opposition that Defendant "Madsen saw and heard [him] react in a manner which expressively suggested Stephens used excessive force and conducted the search in a sexual manner." Docket No. 36-1 ("Edwards Declaration") ¶ 10. Similarly, in his Complaint Mr. Edwards alleges that when Defendant Stephens grabbed his genitalia, he "immediately objected." Compl. at 8. Mr. Edwards's evidence shows that his protests are what made Defendant Madsen aware of Defendant Stephens's conduct, and that his protests came *after* Defendant Stephens' conduct. Thus, there can be no failure to intervene to stop the allegedly unlawful conduct.

Mr. Edwards attempts to circumvent this problem by arguing for the first time in his

1  Opposition that Defendant Stephens's search continued after his protest, giving Defendant Madsen
2  "more than enough time to intervene." Opp. at 3.   However, Mr. Edwards's statements under
3  oath indicate the opposite.  Specifically, in his Complaint Mr. Edwards alleged that when he
4  "objected to Stephens groping him," Defendant Stephens told him to keep his hands on the wall
5  and ceased grabbing his genitalia, instead searching "the waistband of Plaintiff's underwear."
6  Compl. ¶¶ 12-13.  In other words, by the time Defendant Madsen could have reacted to Mr.
7  Edwards's objection to Defendant Stephens's groping, Defendant Stephens had ceased groping
8  and was searching a different portion of Mr. Edwards's anatomy.  When Mr. Edwards objected to
9  the manner in which Defendant Stephens searched his underwear's waistband, Defendant
10 "Stephens *immediately* snapped and stated, 'I search you how I want to, you're going to 602 me,
11 I'm going to have your Housing Unit Officers trash your cell right now, and I'm going to strip
12 search you!'" Compl. at ¶¶ 14-15 (emphasis added).  Likewise, in the Declaration Mr. Edwards
13 filed in support of his Opposition, he stated that when Mr. Edwards protested the manner in which
14 this search was conducted, "Stephens *responded by* saying, 'I can search you how I want to . . . !'"
15 Opp., Edwards Decl. ¶ 10.  Thus, Mr. Edwards's sworn statements in his Complaint and
16 Declaration show that, when he protested Defendant Stephens's painful grabbing of his genitals
17 she stopped doing so and searched elsewhere, and when he threatened to "write [Defendant
18 Stephens] up," the search ceased and Defendant Stephens turned toward retaliatory conduct.  The
19 statements made under oath in the Complaint and Declaration thus show that, before Defendant
20 Madsen could intervene, Defendant Stephens ceased the immediately preceding conduct upon Mr.
21 Edwards's protests.  Although Mr. Edwards states in his Opposition that Defendant Madsen had
22 "more than enough time" to intervene, the statements in the Opposition are not made under oath,
23 *see generally*, Opp., and contradict the statements outlined above which were made under oath.
24 Mr. Edwards's unsworn argument in his Opposition, which contradicts the sworn statements in his
25 Complaint and Declaration, does not constitute competent evidence sufficient to defeat a summary
26 judgment motion.  *See Soto*, 882 F.3d at 873 (concluding that statements made in an unsown
27 opposition are not competent evidence).  Accordingly, Defendants' evidence regarding Defendant
28 Madsen's lack of knowledge is undisputed.

1    Although the Court must view the evidence in Mr. Edwards's favor, it is not required to
2    ignore Defendants' undisputed evidence. *See Lake Wash. Sch. Dist.*, 947 F.3d at 625 (noting that
3    a court need not ignore the movant's undisputed evidence). Even a pro se inmate must produce
4    some competent evidence to raise a dispute of fact. *See Soto*, 882 F.3d at 872 (a pro se inmate is
5    "not entirely release[d] . . . from any obligation to identify or submit some competent evidence
6    supporting his claim"). Because the only competent evidence before the Court shows that
7    Defendant Madsen lacked the fore-knowledge necessary to be deliberately indifferent to
8    Defendant Stephens's infliction of pain upon Mr. Edwards, and in any event lacked the
9    opportunity to intervene, Defendant Madsen is entitled to summary judgment on Mr. Edwards's
10   Eighth Amendment claim for deliberate indifference.

         2.    Excessive Force

     Defendants argue that the excessive force claim against Defendant Madsen fails because the facts show that Defendant Madsen applied no force at all to Mr. Edwards. *See* MSJ at 7 Indeed, Mr. Edwards does not allege that Defendant Madsen ever touched him. *See generally*, Compl. & Edwards Decl.

     Defendants' point is well-taken. For a plaintiff to have an excessive force claim, some physical force must have been applied to his person. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (directing courts to consider "the reasonableness or unreasonableness of the force *used*") (emphasis added); *see also Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003) (identifying as factors in an excessive force claim, "the need for *application of* force" and "the relationship between that need and the amount of force *used*") (emphases added). Where the record reveals that no force was applied to the plaintiff at all, courts routinely reject claims of excessive force. *See Gipe v. Dempsey*, 451 F.2d 1309, 1310-11 (9th Cir. 1971) (affirming dismissal where "[t]he undisputed evidence is that the officers *used no force*") (emphasis added).[1]

---

[1] *See also Peasley v. Rippberger*, -- F. App'x --, 2022 WL 2532929, at *1 (9th Cir. July 7, 2022) ("[T]he district court properly dismissed Peasley's excessive force claim against Rippberger because Rippberger applied no physical force to Peasley . . . .") (citing *Martinez*, 323 F.3d at 1184); *Silverman v. Lane*, No. 18-04510 BLF (PR), 2019 WL 4040111, at *3 (N.D. Cal. Aug. 27, 2019) ("It simply cannot be said that Defendant Ayala subjected Plaintiff to excessive force where *no force* was actually *applied*.") (emphasis added); *see also Griffin v. Cunningham*, No. C 00-

1      Here, although Mr. Edwards's excessive force claim against Defendant Stephens survives,
2 Mr. Edwards's allegations reveal that Defendant Madsen never touched Mr. Edwards, much less
3 applied excessive force to him. *See generally*, Compl. & Edwards Decl.  An excessive force claim
4 thus cannot be based upon Defendant Madsen's direct actions.  To the extent Mr. Edwards would
5 hold Defendant Madsen liable for Defendant Stephens's use of excessive force, as explained
6 above his own allegations show that Defendant Madsen was unaware of Defendant Stephens's
7 actions until after they were completed, and had no opportunity to intervene.  *See supra*, VI.A.
8      For these reasons, Defendant Madsen is entitled to summary judgment on Mr. Edwards's
9 excessive force claim.

B.     <u>Defendants are not Entitled to Summary Judgment on the Fourth Amendment Claims</u>

11     Mr. Edwards argues that being subjected to an unclothed search violated his Fourth
12 Amendment rights.

13     The Fourth Amendment applies to the invasion of bodily privacy in prisons.  *Bull v. San
14 Francisco*, 595 F.3d 964, 974–75 (9th Cir. 2010) (en banc); *Michenfelder v. Sumner*, 860 F.2d
15 328, 333 (9th Cir. 1988).  To analyze a claim alleging a violation of this privacy right, the court
16 must apply the test set forth in *Turner v. Safley*, 482 U.S. 78, 89 (1987), and determine whether a
17 particular invasion of bodily privacy was reasonably related to legitimate penological interests.
18 *Bull*, 595 F.3d at 973; *Michenfelder*, 860 F.2d at 333–34.  The court also should apply the
19 balancing test set forth in *Bell v. Wolfish*, 441 U.S. 520, 559 (1979), and consider the scope of the
20 particular intrusion, the manner in which it was conducted, the justification for initiating it and the
21 place in which it was conducted.  *Bull*, 595 F.3d at 974–75.  The Supreme Court has explained
22 that this involves a "balancing of the need for the particular search against the invasion of personal
23 rights that the search entails." *Bell*, 441 U.S. at 559.  For example, prisoners and pretrial detainees
24 in institutional settings may be subjected to visual body cavity searches, which would be far more
25 invasive than the unclothed search that occurred here, if they are conducted in a reasonable

---

1395 VRW(PR), 2002 WL 356628, at *5 (N.D. Cal. Feb. 26, 2002) (granting summary judgment where "it is undisputed that *no force was used*") (emphasis added), *aff'd,* 49 F. App'x 122 (9th Cir. 2002).

manner. *Bell*, 441 U.S. at 561. But not all unclothed searches will be reasonable; some could be excessive, vindictive, or unrelated to any legitimate penological interest. *Id.*

1. Scope, Manner, and Place

Mr. Edwards appears to argue that the unclothed search was unreasonable because, although it was conducted by Defendant Daguio, a male officer, it was observed by Defendant Madsen, a female officer. *See* Opp. at 8. Although Defendant Madsen contends that her back was turned during the search, *see* Madsen Decl. ¶¶ 14-16, even if she was facing Mr. Edwards this is insufficient to constitute a Fourth Amendment violation. The Ninth Circuit repeatedly has held that occasional viewing of unclothed male prisoners by female correctional officers does not violate the Fourth Amendment rights of the inmates. *See Michenfelder*, 860 F.2d at 334.[2] Although there is a limited exception where a cross-gender unclothed search involves touching the inmate's genitalia, *see Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1142 (9th Cir. 2011), here there is no allegation that Defendant Madsen touched Mr. Edwards at all, much less touched his genitalia while he was in a state of undress. The scope and manner of the search at issue here thus does not violate the Fourth Amendment merely because Defendant Madsen was present during, and potentially observed, the search.

Nor does the place in which the search was conducted violate the Fourth Amendment. It is undisputed that the search occurred in the shower area of a bathroom, rather than in a public area. *See* MSJ at 9 (stating the search occurred in a shower stall), Opp. at 9 (stating that the search occurred in a "first tier shower"). It is also undisputed that no other inmates or staff were present, and no other inmates or staff observed the search. Reply at 4-5. The search did not occur in an unreasonable location.

For these reasons, the scope, manner, and place of the unclothed search counsel against

---

[2] *See also Somers v. Thurman*, 109 F.3d 614, 622 (9th Cir. 1997) ("]I]t is highly questionable even today [in 1997] whether prison inmates have a Fourth Amendment right to be free from routine unclothed searches by officials of the opposite sex, or from viewing of their unclothed bodies by officials of the opposite sex."); *Grummett v. Rushen*, 779 F.2d 491, 494-95 (9th Cir. 1985) (rejecting prisoners' Fourth and Fourteenth Amendment claims against female guards who were assigned to positions that required infrequent and casual observation or observation at a distance of sometimes disrobed prisoners).

finding a Fourth Amendment violation.

2. Justification

Defendants argue that the unclothed search was objectively justified under the circumstances, and that the Court therefore cannot inquire further into Defendant Madsen's motivations.

There is a dispute of fact as to whether the unclothed search was objectively justified. Defendants argue the search was objectively justified because Defendant Madsen suspect Mr. Edwards was concealing contraband, "based upon his reactions during the routine clothed body search." MSJ at 10. Specifically, Defendant Madsen represents that Mr. Edwards was "confrontational" and "agitated." Madsen Decl. ¶¶ 8, 12; *see also* 13 (stating that the unclothed search was conducted because of Mr. Edwards's "behavior and reaction" to the patdown search). However, Mr. Edwards represents that he complied with the patdown search, was neither agitated nor confrontational, and protested only when Defendant Stephens behaved inappropriately. *See* Edwards Decl. ¶¶ 8, 12. Thus, the facts which Defendants contend objectively justify the search are disputed. Because there is a dispute of fact as to whether the circumstances of the clothed search objectively justified the unclothed search, and the facts must be viewed in Mr. Edwards's favor, Defendants are not entitled to summary judgment.

The Court notes that *Nunez v. Duncan*, 591 F.3d 1217 (9th Cir. 2010)), on which Defendants rely for the proposition that the Court cannot consider Defendant Madsen's motives, *see* MSJ at 15, Reply at 5, is distinguishable from the case at bar. *Nunez* involved "a policy authorizing periodic unclothed searches of inmates returning from outside work details," which the court held objectively justified an unclothed search because inmates returning from work outside the prison were in a position to smuggle contraband into the prison. *Nunez*, 591 F.3d at 1227. The objective justification for the search thus did not depend upon an officer's perception of the prisoner-plaintiff's behavior, but rather upon the indisputable fact that the prisoner-plaintiff had left and was returning to prison grounds. *See id*. at 1228. In other cases where the Ninth Circuit or the Supreme Court have held that an unclothed search was objectively justified, the search also was immediately preceded by a circumstance which would have allowed the inmate-

14

plaintiff to smuggle contraband into the prison or his prison unit. *See, e.g., Bell*, 441 U.S. at 558-59 (finding that cavity inspections "after every contact visit with a person from *outside the institution*" were justified because "inmate attempts to secrete these items *into the facility* by concealing them in body cavities are documented in this record") (emphases added).[3]

Here, by contrast, the search at issue was not immediately preceded by a circumstance which would have allowed Mr. Edwards to bring contraband into the prison environment or into his prison unit. Objective circumstances pursuant to policy did not give rise to the search. Rather, it is undisputed that the clothed search, which led to the unclothed search, took place as "[Mr. Edwards] was exiting his housing unit on his way to the dining hall," so that he could eat

---

[3] *See also Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 330 (2012) ("Correctional officials have a significant interest in conducting a thorough search as a standard part *of the intake process*.") (emphasis added); *Bull v. City & Cnty. of San Francisco*, 595 F.3d 964, 966, 976 (9th Cir. 2010) (upholding a policy "requiring the strip search of all arrestees who were to be introduced into San Francisco's general jail population," because "the greatest opportunity for the introduction of drugs and weapons into the jail occurs at the point when an arrestee is *received into the jail* for booking and, thereafter, housing") (emphasis added); *Johannes v. Alameda Cnty. Sheriff Dep't*, 270 F. App'x 605, 606 (9th Cir. 2008) (upholding searches "performed pursuant to a jail policy providing for visual strip searches of 'inmates who have been ... *outside of the secured facility* ... upon return to the facility or housing unit'") (emphasis added); *Sandon v. Lewis*, 139 F.3d 907 (9th Cir. 1998) (finding that body cavity searches "when [prisoner-plaintiff] returned to his unit after visiting the law library" did not violate Fourth Amendment because "the prisoner may have the opportunity to obtain contraband"); *Young v. Thompson*, 992 F.2d 1221 (9th Cir. 1993) ("strip searches and body cavity inspections conducted *after inmates have contact with persons from outside the institution* do not violate the fourth amendment") (emphasis added) (citing *Bell,* 441 U.S. at 558–60); *Michenfelder*, 860 F.2d at 332 (upholding a policy calling for a visual bodily cavity search "whenever an inmate *leaves or returns* to the unit") (emphasis added); *Dillon v. Clackamas Cnty.*, No. 20-35544, 2022 WL 1285042, at *4 (9th Cir. Apr. 29, 2022) ("[T]he jail's strip search policy is reasonably related to the legitimate penological interest of preventing the concealment of contraband by inmates *returning from court proceedings*.") (emphasis added); *Cunningham v. Multnomah Cnty.*, 737 F. App'x 814, 816 (9th Cir. 2018) (unclothed search of kitchen crew was justified because inmates could obtain contraband during their access to prison's kitchen); *United States v. Fowlkes*, 804 F.3d 954, 961 (9th Cir. 2015) ("The LBPD's warrantless visual strip search of Fowlkes during the jail intake process was not unreasonable [because] [t]he government has a strong interest in preventing contraband *from entering its prisons and jails . . . .*") (emphasis added); *Foster v. Gentry*, 518 F. App'x 594, 595 (9th Cir. 2013) ("The prison's practice of searching new inmates has a valid and rational connection to preventing contraband *from entering into the institution.*") (emphasis added); *Cuffle v. Agnos*, 26 F.3d 130 (9th Cir. 1994) (unpublished) (upholding a policy requiring unclothed searches of prisoners returning from the medical unit). *Cf. Shorter v. Baca*, 895 F.3d 1176, 1188-89 (9th Cir. 2018) (holding jail officials not entitled to deference with respect to legitimate penological purpose where repeated search of detainees occurred after returning from court rather than just at admitting, and the procedures involved leaving noncompliant female inmates shackled to cell doors for hours, virtually unclothed, and without access to meals, water, or a toilet, while visible to both male and female guards on patrol).

1  breakfast. MSJ at 3; *see also* Compl at 8, Madsen Decl. ¶ 7. The unclothed search was based on
2  Defendants' perception of Plaintiff's behavior. Defendants have not introduced any evidence that
3  Mr. Edwards's presence in his housing unit was likely to give him access to contraband.
4        Because the situation here is distinguishable from those in which a court held that an
5  unclothed search was objectively justified, and because Mr. Edwards disputes Defendants'
6  contention that he behaved in a confrontational and agitated manner, there is a genuine dispute of
7  material fact as to whether the unclothed search was justified. Accordingly, Defendants are not
8  entitled to summary judgment on this claim.

      3.      Damages Request

      Although Defendants are not entitled to summary judgment on this claim to the extent Mr. Edwards seeks injunctive or declaratory relief, *see* Compl. at 14, they are entitled to summary judgment as to any damages request stemming from the unclothed search.

      Congress has established that "[n]o Federal civil action may be brought by a prisoner confined in a . . . correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . . ." 42 U.S.C. § 1997e(e). Here, Mr. Edwards contends that the search was "unnecessary, intrusive, demeaning, humiliating, and retaliatory," Compl. at 13, but does not allege that it caused him any physical harm. Nor does he contend that it was a sexual act, as he alleges about Defendants Stephens's inappropriate patdown search. *Compare id*. at 13 *with id*. at 12. Thus, because the unclothed search neither caused physical harm to Mr. Edwards, nor was a sexual act, he cannot obtain damages for mental or emotional injuries caused by the unclothed search. *See Byrd v. Arpaio*, No. CV 04-02701-PHX-NVW, 2011 WL 5434240, at *3 (D. Ariz. Oct. 24, 2011) (following remand on other issues, holding that plaintiff cannot recover damages for an unclothed search which imposed no physical harm and was not a sexual act).

C.      First Amendment Claims

      Defendants move for summary judgment on Mr. Edwards's claims against Defendants Mora and Bramers, arguing that these Defendants were unaware of Mr. Edwards's threat to file a grievance. MSJ at 11. Mr. Edwards responded by introducing evidence that Defendant Stephens

1  instructed Defendants Mora and Bramers to "trash [Mr. Edwards's] cell [because] he's threatening
2  to" file a grievance against Defendant Stephens, and that the search of Mr. Edwards's cell
3  immediately followed. Edwards Decl. ¶ 18. Defendants did not respond to this evidence in their
4  Reply. *See generally*, Reply.

There appears to be a dispute of fact as to whether Mr. Edwards's cell was searched randomly, or whether the search was conducted for a retaliatory purpose and whether Mora and Bramers were aware of that purpose. Because causation is an element of a First Amendment retaliation claim, *see Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005), this dispute goes to a material fact. Defendants thus are not entitled to summary judgment on Mr. Edwards's First Amendment claim.

However, as with Mr. Edwards's Fourth Amendment claim, he suffered no physical injury from the allegedly retaliatory search, and the search was not a sexual act. Mr. Edwards thus cannot recover damages for the retaliatory search. *See supra* VI.B.; *see also* 42 U.S.C. § 1997e(e). Accordingly, Defendants are entitled to summary judgment as to Mr. Edwards's request for damages for the alleged First Amendment violation.

## VII.  CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel is **DENIED**. Docket No. 33. Defendants' partial motion for summary judgment is **GRANTED IN PART.** Docket No. 29.

Defendant Madsen is entitled to judgment in her favor on Mr. Edwards's Eighth Amendment claims, and Defendants are entitled to summary judgment on Mr. Edwards's First and Fourth Amendment claims to the extent he seeks damages.

The claims still at issue in this action are:

- Eighth Amendment claims for damages and equitable relief against Defendant Stephens (Plaintiff alleges he suffered physical pain when Defendant Stephens groped him.);
- First Amendment claims for equitable relief only, against Defendant Stephens for ordering other officers to retaliate against Mr. Edwards; against Defendant Madsen for participating in a retaliatory unclothed search; and against Defendants Mora and

17

Bramers for a retaliatory cell search and property confiscation; and

- Fourth Amendment claims for equitable relief only, against Defendants Daguio and Madsen for conducting an unclothed search in a humiliating fashion.

This action is now referred to Magistrate Judge Illman for mediation or settlement proceedings pursuant to the Pro Se Prisoner Mediation Program. The Clerk shall send a copy of this order to Magistrate Judge Illman.

This order disposes of Docket Nos. 29 and 33.

**IT IS SO ORDERED**.

Dated: August 30, 2022

_____
EDWARD M. CHEN
United States District Judge

18